872 F.2d 416
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
AMERICAN AUTOMATIC SPRINKLER SYSTEMS, INC., Plaintiff-Appellee,
v.
ATCHISON & KELLER, INC., Defendant and Third Party Plaintiff-Appellant,
and
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant,
v.
HCB CONTRACTORS, Third Party Defendant.
 No. 88-3111.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 5, 1988.
Decided March 24, 1989.
 
 Mark Peyser Friedlander, Jr. (Friedlander & Friedlander, P.C., on brief) for appellant.
 Julian Karpoff (Karpoff, Title & Mitnick, on brief) for appellee.
 Before ERVIN, Chief Judge, BUTZNER, Senior Circuit Judge, and MALCOM J. HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Atchison & Keller ("A & K"), a construction subcontractor, and the National Fire Insurance Company of Pittsburgh, A & K's surety, appeal from a judgment on the pleadings in favor of American Automatic Sprinkler Systems, Inc. ("American"), a second-tier subcontractor to A & K. American initiated this suit with a complaint for $47,545.00 it believed A & K owed for work completed. A & K's answer admitted a $45,056.65 liability, but alleged the debt would not fall due under its contract with American until HCB Contractors ("HCB"), the prime contractor, had paid A & K.[1] American's Fed.R.Civ.P. 12(c) motion argued that the condition had been satisfied. The district court agreed, and rendered a $45,056.65 judgment for American. Finding little to support A & K's arguments in favor of overturning or reducing the judgment, we affirm.
 
 
 2
 A & K has two arguments. The first is that HCB's debt to it is doubly significant. None of the parties contests that the date of payment of HCB's debt is the date A & K's debt to American falls due. Dispute instead centers on A & K's associated contention that the amount of HCB's payment is the most A & K is obliged to pay American under the A & K-American subcontract.
 
 
 3
 A & K's second argument is that, whether or not the conditions it argues for have been met, American fraudulently inflated its claim and A & K should therefore be able to avoid its answer's admission of a $45,056.65 liability. A & K supports this argument with the affidavit of its president, Roland Kinser. Mr. Kinser stated that while attending an unspecified "pretrial discovery" proceeding, he learned that American had charged A & K twice for some shower heads and then deliberately concealed the overage from A & K and HCB. A & K has not provided any substantiation for the statements in Mr. Kinser's affidavit.
 
 
 4
 We cannot accept A & K's contention that it need pay American no more than HCB pays it. Shortly after answering American's complaint, A & K commenced a suit to recover amounts HCB owed it under the A & K-HCB subcontract. HCB settled with A & K for $26,409.00. The settlement occurred shortly before A & K offered and American refused a settlement in the identical amount of $26,409.00. American advanced its 12(c) motion soon after declining A & K's offer. Only then did A & K propose that its answer introduced a condition of dual significance.
 
 
 5
 There is no evidence, and no other basis on which we may reasonably conclude, that American agreed to receive only what A & K could extract from HCB.[2] American had no contractual relationship with HCB. A & K admits it owed American $45,056.65 for services rendered. A & K now attempts to retreat from its admission, describing the $45,056.65 as simply a ceiling on its liability and the A & K-HCB relationship as the determinant of what American may actually receive.[3]
 
 
 6
 We believe A & K's answer alone forecloses it from proceeding with its argument. A & K admitted the existence of a contract according to which American would provide construction materials and labor. A & K also admitted it was bound to pay American what it owed for this work once it had settled accounts with HCB. Even interpreting these admissions as far as we reasonably may in A & K's favor, they do not allow us to infer that A & K was also free to excuse itself from so much of its debt to American as it could not recover from HCB. While we see the sense of A & K's guarding against cash flow problems by requiring its subcontractor to wait until the prime contractor had paid off, it would be unreasonable to imagine that American gratuitously assumed the risk that HCB would not fully satisfy its debt to A & K.[4]
 
 
 7
 We believe Mr. Kinser's affidavit is not sufficient to create a genuine issue of fraud by American, and accordingly affirm entry of judgment in the amount A & K's answer admits.[5] In Howell v. General Electric Co., No. 87-1044 (4th Cir. Jan. 8, 1988) (Westlaw, CTA4 file), we held that an affidavit that is "conclusory and void of factual support ... will not create a jury question." (citations omitted). We believe the Howell holding captures Mr. Kinser's affidavit. The affidavit never indicates how American duped A & K into believing it owed extra for shower heads actually within the original contract. Most telling, A & K has never proffered any fruits of the "pretrial discovery" that is the only basis given for Mr. Kinser's statements.[6] Without cognizable support for its fraud charge, A & K is bound to heed its own admission of a $45,056.65 debt.
 
 
 8
 For the foregoing reasons, we find no error in the district court's conclusion that A & K is bound by the admissions in its answer.
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 The answer stated that "[American] has performed certain services under [the American-A & K] contract for which there will be a balance due and owing to it of $45,056.65, but said sum is not due and owing at this time because one of the conditions of the contract ... is that [A & K] is not indebted to [American] for labor performed or materials supplied until the prime contractor on the project, HCB Contractors, has paid [A & K] for the labor and materials."
 
 
 [2]
 The parties supported their memoranda to the district court with material outside the pleadings, viz., A & K's offer of judgment and Mr. Kinser's affidavit. While the district court's order granting judgment to American did not refer to this material, it appears the district court must have reviewed and relied on it. Rule 12(c) requires us to treat a motion so supported as one for summary judgment under Fed.R.Civ.P. 56. Our analysis proceeds accordingly
 
 
 [3]
 Despite the document's obvious relevance, American did not choose to include a copy of the A & K-American contract with its memorandum to the district court or in the record on appeal. We must therefore take the pleadings as the only indication of what the contract provided
 
 
 [4]
 This interpretation is the more unreasonable because A & K's surety had issued a $1,004,565.00 payment bond. The bond would have provided recourse for American even had HCB refused to pay anything and A & K proved unable to pay from its own funds
 
 
 [5]
 We assume that Mr. Kinser's statements, informed as he averred by "pretrial discovery", satisfied the requirement of Rule 56(e) that affidavits "be made on personal knowledge." See Spannaus v. United States Dep't of Justice, 813 F.2d 1285, 1289 (4th Cir.1987)
 
 
 [6]
 A & K has not alleged that it had insufficient opportunity to unearth and present further support for its fraud claim, or, for that matter, of its interpretation of the A & K-American contract. Our resolution of A & K's fraud contention obviates the need to consider whether the district court might have discounted Mr. Kinser's affidavit under Fed.R.Civ.P. 56(e) as hearsay or as given without personal knowledge