**Victor CUCCI, Plaintiff,**

v.

**DRUG ENFORCEMENT ADMINISTRATION, et al., Defendants.**

Civ. A. No. 93–2086 PLF.

United States District Court, District of Columbia.

Dec. 27, 1994.

Bernard Fensterwald, III, Vienna, VA, for plaintiff.

Suzanne C. Nyland, Washington, DC, for defendants.

## OPINION

FRIEDMAN, District Judge.

This case is before the Court on defendants' motion for summary judgment, plaintiff's motion for summary judgment and plaintiff's motion to strike.[1] Upon consideration of the motions and supporting memoranda, the entire record before the Court, and counsels' arguments in open court, the Court finds that there are no genuine issues of material fact and that defendants are entitled to judgment as a matter of law.

## I. BACKGROUND

Mr. Cucci was convicted in 1991 for conspiracy to distribute a controlled substance and the illegal use of a communications facility. In July 1993, Cucci requested from defendants, under the Freedom of Information

---

1. The defendants were originally the Drug Enforcement Administration, the Federal Bureau of Investigation, the United States Marshal's Service, the United States Customs Service, the United States Department of Justice, and the Executive Office of U.S. Attorneys. The complaint was dismissed as to the Executive Office of U.S. Attorneys for lack of subject matter jurisdiction and plaintiff has conceded the granting of summary judgment for the Marshal's Service. The government has asserted that the Department of Justice found no records responsive to plaintiff's request, and plaintiff has not contested this assertion. Judgment for and dismissal of the Department of Justice therefore is appropriate.

Act and the Privacy Act, records pertaining to Mr. Cucci, the FBI-led drug investigation called Operation Infamita, and certain other individuals connected to Cucci's case. 5 U.S.C. §§ 552, 552a. After the defendants failed to respond within the statutorily required time, Mr. Cucci filed this lawsuit seeking the records he had requested under the FOIA and the Privacy Act.

By February 1, 1994, defendants completed processing plaintiff's request. The FBI released three pages in full or in part and withheld all remaining pages in their entirety. Exhibit CC. The DEA released 196 pages in full or in part and withheld 338 pages in their entirety. Declaration of Kevin Janet ("Janet Decl.") ¶ 20; Supplemental Declaration of Kevin Janet ¶ 16. The Customs Service released 50 pages in full or in part, withheld 25 pages in their entirety and referred 64 pages to the originating agencies for disclosure in accordance with their policies. Declaration of Karen Kuhn ("Kuhn Decl.") ¶ 7. Defendants claim that they released all responsive records to plaintiff that were not covered by FOIA and Privacy Act exemptions. Defendants invoked several FOIA exemptions, including Exemptions 2, 3, 7(A), 7(C), 7(D), 7(E) and 7(F), and Privacy Act Exemption (j)(2). Plaintiff has conceded the applicability of FOIA Exemptions 2, 3, 7(E) and 7(F), and has not opposed defendants' invocation of Privacy Act Exemption (j)(2).

The issues remaining before the Court are whether the FBI properly invoked FOIA Exemption 7(A); whether the DEA and the Customs Service properly asserted FOIA Exemptions 7(C) and 7(D); and whether the *Vaughn* indices prepared by defendants were sufficient. Plaintiff also is seeking an Order directing each defendant to release to plaintiff, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), all exculpatory information contained in its files.

## II. STANDARD OF REVIEW

Summary judgment should be granted to the movant if it has shown, when the facts are viewed in the light most favorable to the nonmovant, that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For summary judgment to be granted in the agency's favor in an FOIA case, the agency must "prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [FOIA's] inspection requirements." *National Cable Television Ass'n, Inc. v. FCC*, 479 F.2d 183, 186 (D.C.Cir.1973). When the agency seeks summary judgment based on an FOIA exemption, it can discharge its burden by providing a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C.Cir.1977). The Court may award summary judgment solely on the information provided in affidavits or declarations that explain how requested information falls within a claimed exemption if the affidavits or declarations are sufficiently detailed, nonconclusory and submitted in good faith. *Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

## III. FOIA CHALLENGES

### A. Exemption 7(A)

■ Exemption 7(A) of the FOIA protects from disclosure law enforcement records "to the extent that" their production "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The FBI relied upon Exemption 7(A) to withhold all but three pages of its records concerning plaintiff, Operation Infamita and Messrs. Maurizio Cucci and Francisco D'Arpa.

■ The FBI did not detail on a document-by-document basis the interference with enforcement proceedings that would result from the disclosure of each of its documents. Instead, pursuant to *Bevis v. Dep't of State*, 801 F.2d 1386 (D.C.Cir.1986), the agency grouped documents into relevant cat-

egories that it contends "are sufficiently distinct to allow a court to grasp 'how each ... category of documents, if disclosed, would interfere with the investigation.'" *Id.* at 1389 (citations omitted). To substantiate an Exemption 7(A) claim on a "generic" basis, the FBI must (1) define its categories functionally, (2) conduct a document-by-document review to assign documents to the proper category, and (3) explain to the court how the release of each category of documents would interfere with enforcement proceedings. *Bevis v. Dep't of State,* 801 F.2d at 1389–90.

FBI declarant Robert A. Moran described the seven types of documents withheld by the FBI and their functional usage of such documents. Declaration of Robert A. Moran ("Moran Decl.") ¶ 59.[2] The declaration sets out two broad categories within which these documents were placed, administrative materials and evidentiary matters, and eight types of material within the categories. The administrative materials category includes administrative instructions, routine reporting communications and inter-agency correspondence. Moran Decl. ¶¶ 61–66. The evidentiary matters category includes witness statements, information exchanged between the FBI and local law enforcement agencies, physical evidence, evidence obtained pursuant to search warrants and documents relating to the case's documentary and physical evidence. Moran Decl. ¶¶ 67–74. Agent Moran stated that "[t]he responsive records which have been withheld under Exemption (b)(7)(A) have been reviewed and categorized in terms of the information contained in these documents." Moran Decl. ¶ 60. Finally, Agent Moran outlined the specific harms for each of the eight types of information in the two categories that the FBI reasonably expected to follow from any disclosure of the documents. Moran Decl. ¶¶ 62–74. The harms identified by the FBI included the threat to the continued safety and cooperation of witnesses and confidential sources that could be disclosed to subjects of continuing FBI investigations if the documents are provided to Cucci. Moran Decl. ¶¶ 64, 65, 68, 69. The FBI also stated that release of the

documents could enable parties under investigation to alter or destroy evidence, concoct false alibis, change their behavior or formulate strategies to defend prosecutions (Moran Decl. ¶¶ 64, 66, 71, 72, 73), and could lead to the loss of vital communications from other cooperating law enforcement entities providing information to the FBI in confidence (Moran Decl. ¶ 70).

Cucci claims that the only ongoing investigation by the FBI relates to plaintiff's alleged violations of tax laws. Cucci states that he seeks only those records pertaining to his arrest and conviction, and the circumstances leading to his arrest, for conspiracy to distribute a controlled substance and the illegal use of a communications facility. He argues that these records relate to a terminated investigation and states that he does not seek records compiled thereafter relating to the ongoing tax investigation. Cucci argues that the FBI failed to fulfill its obligation to "segregate" and disclose all nonexempt records not dealing with the tax investigation. Cucci asserts that the FBI only gave a conclusory explanation of why it could not segregate the records. *See Mead Data Central, Inc. v. Dep't of the Air Force,* 566 F.2d at 261.

The FBI argues that Cucci's speculation that the FBI files concerning him are segregable into materials that relate only to his 1992 conviction for conspiracy to distribute a controlled substance and the illegal use of a communications facility and those that relate only to the tax investigation is unfounded. The FBI suggests that the records pertain to more than these two investigations and that they are intertwined with other ongoing investigations. The FBI claims that its records were compiled during the course of investigations of the sales and distribution of illegal narcotics that are "still active in the development of potential evidence and witnesses and possible future subjects of investigation" and that "[a]lthough some subjects in these investigations have been convicted, it is probable that information used against those subjects could be used in the prosecution of

---

**2.** Because the Court concludes on the basis of Mr. Moran's public declaration that the agency has complied with the FOIA, it need not and does not consider Mr. Moran's *in camera* declaration.

future subjects of investigation." Moran Decl. ¶¶ 57, 58. Moreover, Agent Moran, after setting forth the general nature of the ongoing investigations, declared that "there are no reasonably segregable portions of any documents related to the plaintiff that could be released without jeopardizing the ongoing investigations." Moran Decl. ¶ 57; *see also* Moran Decl. ¶¶ 76, 77.

The Court has examined the FBI declaration and exhibits and finds that the FBI has not misapplied Exemption 7(A). The FBI has properly supported, and the plaintiff has not effectively countered, the FBI's position that there are multiple intermingled investigations and not just the terminated investigation resulting in Cucci's conviction and the tax investigation of Cucci. The declaration of Agent Moran has sufficiently demonstrated that the FBI followed the dictates of *Bevis v. Dep't of State.* Because the agency has met its burden of showing that all its records are exempt and relate to the continuing investigations of the sales and distribution of illegal narcotics, there are no non-exempt portions of the records to segregate.

### B. Exemption 7(C)

■ Exemption 7(C) of the FOIA protects from disclosure those records or information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

The DEA and the Customs Service invoke this Exemption to withhold names, initials or identifying information of law enforcement agents and support personnel, third parties mentioned in investigative files, and third parties of investigative interest to the agencies. They argue that this information should not be released because it would subject these individuals to possible animosity, could impede the agencies' effectiveness in other investigations, and could subject certain individuals to stigmatizing speculation regarding their involvement in an investigation. *See Fitzgibbon v. CIA,* 911 F.2d 755, 767 (D.C.Cir.1990). Defendants also maintain that there is slight public interest in the

revelation of the individuals' identities, which does not outweigh the substantial privacy concerns of those mentioned in the documents.

Plaintiff argues that the public interest in disclosing the information outweighs the privacy concerns. Plaintiff contends that Cucci's conviction involved corruption in the DEA that is of keen public interest. Cucci offers no support for his contention. Moreover, as defendants point out, the United States District Court for the Southern District of West Virginia, in denying Mr. Cucci's motion for a new trial, has already found no prosecutorial misconduct in connection with Cucci's drug conviction. *United States v. Vittorio Cucci,* Cr. No. 5:91–00230–01 (S.D.W.Va. July 16, 1992).

The privacy interests of persons mentioned in law enforcement files are "substantial," while "[t]he public interest in [their] disclosure is not just less substantial, it is insubstantial." *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1205 (D.C.Cir.1991). Cucci has failed to show that the public interest in the disclosure of the information that the defendants are retaining under Exemption 7(C) is other than insubstantial.[3]

### C. Exemption 7(D)

■ Exemption 7(D) of the FOIA protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation ... information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). To invoke Exemption 7(D), an agency must show either that a source provided the information to the agency under express assurances of confidentiality or that the circumstances support an inference of confidentiality. *U.S. Dep't of Jus-*

---

**3.** The Court also finds that Mr. Cucci failed to show that the DEA used arbitrary criteria for

determining which names to release and which to withhold.

*tice v. Landano,* ── U.S. ──, ──, ──, 113 S.Ct. 2014, 2019, 2024, 124 L.Ed.2d 84 (1993).

■ Plaintiff challenges the Customs Service's withholding of Virginia State Police records under this Exemption. Cucci contends that the Customs Service has failed to show that the Virginia State Police provided the information under express assurances of confidentiality and that the Customs Service has not met its burden to show that an assurance of confidentiality should be implied. In a motion to strike, Cucci challenges the declaration of Karen Kuhn in support of the U.S. Customs Service. He argues that Ms. Kuhn lacked personal knowledge on which to base her declaration that non-federal law enforcement agencies "provided information to the USCS on a confidential basis, with the understanding that the information will not be disseminated outside the USCS, unless the information is directly related to an arrest.... These state and local law enforcement agencies expressly stated that this information was provided on a confidential basis." Kuhn Decl. ¶ 22. He claims, therefore, that the Court may not consider Ms. Kuhn's declaration under Rule 56(e), Fed.R.Civ.P., and that it should be stricken.[4]

In response to the motion to strike, the government asserts that the Kuhn declaration describes an express promise of confidentiality gleaned from Ms. Kuhn's review of the records themselves. In a supplemental declaration, Ms. Kuhn certifies that the Virginia State Police reports have a warning printed on each page stating that the document "is not to be distributed outside your agency." Supplemental Declaration of Karen Kuhn ("Kuhn Supp.Decl.") ¶ 3. She also states that upon seeing the warning notice, she contacted a representative of the Virginia State Police who told her that the State Police provide their law enforcement records to other agencies based upon an express understanding of confidentiality. Kuhn Supp.Decl. ¶¶ 4–6.

■ The Court finds that Ms. Kuhn had the requisite personal knowledge based upon her examination of the records and her discussion with a representative of the Virginia State Police to declare that the Virginia State Police provided its records with the understanding that they would remain confidential. *See Londrigan v. FBI,* 670 F.2d 1164, 1174 (D.C.Cir.1981) (stating that affiant is competent to testify to his own observations upon review of the documents); *Laborers' Int'l Union of North America v. U.S. Dep't of Justice,* 578 F.Supp. 52, 56 (D.D.C.1983), *aff'd,* 772 F.2d 919 (D.C.Cir.1984). Although this is not a sufficient basis to establish that the Customs Service provided a reciprocal express assurance of confidentiality to the Virginia State Police, the Court finds that the Customs Service has provided sufficient information to show that such an assurance of confidentiality should be implied.

■ The Kuhn Declarations establish that the Virginia State Police normally only provide records with the understanding that they will remain confidential, that each page of the documents they provided expressly stated that they were confidential and not to be distributed outside the federal agency, and that the Virginia State Police expected that this express request for confidentiality would be respected. Kuhn Decl. ¶ 22; Kuhn Supp.Decl. ¶¶ 3, 6. Because the Virginia State Police specifically requested confidentiality, the Court can reasonably infer that the Customs Service accepted the information with the understanding that it would remain confidential. *See U.S. Dep't of Justice v. Landano,* ── U.S. at ──, 113 S.Ct. at 2019; *Londrigan v. FBI,* 670 F.2d at 1174. Because local and state law enforcement agencies are encouraged to share information with federal authorities, the information should be kept confidential if there is a previous understanding that confidentiality will be respected. *See Rojem v. U.S. Dep't of Justice,* 775 F.Supp. 6, 12 (D.D.C.1991). That understanding exists in this case.

---

4. Rule 56(e), Fed.R.Civ.P., provides in pertinent part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

## 514

### D. Sufficiency of Vaughn index

■ Plaintiff challenges the adequacy of the DEA's and the Customs Service's indices submitted by the government pursuant to *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), and the FBI's choice not to create a *Vaughn* index.

An agency typically must submit an index identifying the documents withheld and the statutory exemption claimed. An adequate *Vaughn* index facilitates the trial court's duty of ruling on the applicability of certain invoked FOIA exemptions, gives the requester as much information as possible that he may use to present his case to the trial court and thus enables the adversary system to operate. *Lykins v. U.S. Dep't of Justice,* 725 F.2d 1455, 1463 (D.C.Cir.1984). "[I]t is the function, not the form, of the index that is important." *Keys v. U.S. Dep't of Justice,* 830 F.2d 337, 349 (D.C.Cir.1987) (citations omitted). So long as the *Vaughn* index and supporting government affidavits are sufficiently specific to support the exemptions claimed, the agency need not submit an index with "a degree of detail that would reveal precisely the information that the agency claims it is entitled to withhold." *Id.*

Plaintiff argues that despite providing an extensive *Vaughn* index, the DEA failed to adequately describe the nature of each document withheld in functional terms and failed to disclose on the face of each document which exemption applies to which redaction. Having reviewed the DEA's index and supporting affidavits, the Court rejects plaintiff's claim. The DEA has sufficiently explained the reasons for the application of each exemption. Janet Decl. ¶¶ 24–39. For those documents with redactions, the index sufficiently described which exemptions applied to which redactions; contrary to plaintiff's argument, it is not necessary for the exemptions to be listed on the actual pages of the documents. *See Keys v. U.S. Dep't of Justice,* 830 F.2d at 349–50. The Court also finds that the *Vaughn* index prepared by the Customs Service was adequate.

The FBI provided no *Vaughn* index because it claimed an exemption for all of its records under Exemption 7(A). Having up-held the FBI's statement that the information was not segregable, the Court finds that the FBI was not required to prepare a *Vaughn* index.

### IV. BRADY CLAIM

■ Plaintiff argues that the obligation to turn over exculpatory information that is required by the Constitution under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), trumps the legitimate decision of a federal agency to withhold information under a particular exemption of the FOIA.

The government suggests that plaintiff's claim that exculpatory evidence was withheld should be raised in a habeas corpus proceeding, not in an FOIA case. The government also argues that the FOIA treats all requesters alike and that a particular requester's status or reason for filing a FOIA/Privacy Act request is irrelevant and does not effect the exemptions the government may invoke. *See North v. Walsh,* 881 F.2d 1088, 1096 (D.C.Cir.1989). The Court agrees with defendants.

As the court stated in *Johnson v. U.S. Dep't of Justice,* 758 F.Supp. 2, 5 (D.D.C. 1991), *Brady v. Maryland* does not provide grounds for waiving FOIA exemptions: "Resort to *Brady v. Maryland* as grounds for waiving confidentiality is ... outside the proper role of FOIA. Exceptions cannot be made because of the subject matter or the identity of the requester." The agency is not "required by FOIA to forego a statutory exemption for a document in its possession because the document has been identified as possibly exculpatory." *Johnson v. U.S. Dep't of Justice,* 758 F.Supp. at 5.

Plaintiff may not trump the agencies' invocation of the FOIA exemptions by arguing that the exempted information should be provided as exculpatory evidence. His arguments based on *Brady v. Maryland* and its progeny should be raised in a collateral proceeding challenging his conviction.

### V. CONCLUSION

For the forgoing reasons, plaintiff's motion for summary judgment and motion to strike

are DENIED, and defendants' motion for summary judgment is GRANTED. An Order consistent with this Opinion is entered this same day.

SO ORDERED.

### ORDER

This case came before the Court on November 7, 1994, for a hearing on Plaintiff's Motion for Summary Judgment, Plaintiff's Motion to Strike, and Defendants' Motion For Summary Judgment. Upon consideration of the motions, the supporting and opposing papers, the entire record in this case, and the arguments of counsel presented in open court, and for the reasons stated in the accompanying Opinion, the Court finds that there are no genuine issues as to any material facts and that defendants are entitled to judgment as a matter of law. Accordingly, it is hereby

ORDERED that Plaintiff's Motion to Strike is DENIED; it is

FURTHER ORDERED that Plaintiff's Motion For Summary Judgment is DENIED and Defendants' Motion For Summary Judgment is GRANTED; it is

FURTHER ORDERED that judgment is entered in Defendants' favor; and it is

FURTHER ORDERED that this action is DISMISSED with prejudice.

SO ORDERED.